# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| TIMOTHY JOHNSON, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | Case No. 3:17-cv-01278 |
| ) | Judge Trauger |
| RUSTY WASHBURN, ) | |
| ) | |
| Respondent. ) | |

## MEMORANDUM

The petitioner, an inmate at Trousdale Turner Correctional Center in Hartsville, Tennessee, has filed a petition for writ of habeas corpus under 28 U.S.C. § 2254. (Doc. No. 1.) The respondent has filed the transcript of the state court record (Doc. No. 10) and an answer to the petition, in which he argues that the petition should be denied. (Doc. No. 11.) The petitioner has filed a motion to proceed on claims (Doc. No. 12), which the court construes as a motion to amend the petition. He has also filed a motion for a hearing and to appoint counsel for that hearing (Doc. No. 13), as well as a reply to the respondent's answer. (Doc. No. 14).

For the reasons given below, and by order entered contemporaneously with this memorandum, the court will grant the motion to amend the petition, deny the petition as amended, and deny as moot the motion for hearing.

## I.  Procedural History

The respondent's answer contains the following summary of the procedural history leading to the timely filing of the habeas petition in this court:

> On March 27, 2012, Petitioner was charged with tampering with evidence, resisting arrest, and the sale of less than .5 grams of cocaine in a drug-free school zone. (Doc. No. 10-1 at 4–6.) Prior to trial, Petitioner pled guilty to resisting arrest in

> exchange for a six-month sentence. (Doc. No. 10-5 at 5; Doc. No. 10-1 at 18.) Following a jury trial on the remaining charges, Petitioner was convicted of one count of tampering with evidence. (Doc. No. 10-1 at 17.) The trial court imposed a 12-year sentence as a persistent offender to be served concurrently to Petitioner's six-month sentence for resisting arrest. (*Id*.) The jury was unable to reach a verdict as to the sale of cocaine charge, however, and the trial court declared a mistrial on that count. (Doc. No. 10-3 at 235–36.) Following re-trial, Petitioner was found guilty of sale of less than .5 grams of cocaine within a drug-free school zone. *State v. Johnson*, No. M2015-01160-CCA-R3-CD, 2016 WL 3435589, *1 (Tenn. Crim. App. Jun. 15, 2016), *perm. app. denied* (Tenn. Oct. 19, 2016). Petitioner was subsequently sentenced to 20-years imprisonment. (Doc. No. 10-12 at 63.)
>
> The Tennessee Court of Criminal Appeals ("TCCA") affirmed Petitioner's conviction and sentence for tampering with evidence on March 2, 2015. *State v. Johnson*, M2014-00766-CCA-R3-CD, 2015 WL 894675 (Tenn. Crim. App. Mar. 2, 2015). Petitioner did not seek discretionary review from the Tennessee Supreme Court.
>
> The TCCA affirmed Petitioner's conviction and sentence for sale of less than .5 grams of cocaine in a drug free school zone on June 15, 2016. *State v. Johnson*, M2015-01160-CCA-R3- CD, 2016 WL 3435589 (Tenn. Crim. App. Jun. 15, 2016), *perm. app. denied* (Tenn. Oct. 19, 2016). The Tennessee Supreme Court denied Petitioner's application for discretionary review on October 19, 2016. *Id*.
>
> On July 15, 2015, Petitioner sought post-conviction relief from his conviction for tampering with evidence. (Doc. No. 10-25 at 19–27.) Following an evidentiary hearing the post-conviction court denied relief, and the TCCA affirmed on March 9, 2017. *Johnson v. State*, M2016-01462-CCA-R3-PC, 2017 WL 943365 (Tenn. Crim. App. Mar. 9, 2017), *perm. app. denied* (Tenn. Jun. 7, 2017.) The Supreme Court of Tennessee denied the Petitioner's application for discretionary review on June 7, 2017. *Id*.
>
> On July 8, 2016, Petitioner filed a petition for post-conviction relief attacking his conviction for sale of cocaine. (Doc. No. 10-36 at 1–10.) The petition was dismissed as premature, however, because Petitioner's conviction and sentence had not yet become final. (*Id.* at 11–12.) The TCCA affirmed the dismissal on November 7, 2016. (*Id.* at 14.)

(Doc. No. 11 at 2–3.)

The respondent asserts that the petitioner "did not file a second post-conviction petition upon conclusion of the direct appeal" from the dismissal of his premature July 8, 2016 petition. However, in his reply to the respondent's answer, the petitioner asserts that he did file "a second

2

post-conviction that was denied on June 23, 2017," and that he attempted to notice an appeal from that denial, "to no avail." (Doc. No. 14 at 2.) He attaches to his reply the June 23, 2017 order of the Davidson County Criminal Court. (*Id.* at 4–13.) This order bears the case number corresponding to the petitioner's conviction for tampering with evidence (2012-B-1770), is denominated "Second Post-Conviction" (*id.* at 4), and disposes of the second petition on grounds that "[t]he Post-Conviction Procedure Act authorizes only one post-conviction petition per judgment." (*Id.* at 9.) The Davidson County Criminal Court nonetheless considered the three claims of the petition (*id.* at 8), all of which relate to the petitioner's conviction for selling cocaine in a drug-free school zone, and are repeated in his habeas corpus petition before this court. While neither this order nor the petitioner's second post-conviction petition was included in the respondent's production of the record of state court proceedings, it appears to this court that the second petition was either mislabeled by the petitioner as corresponding to case number 2012-B-1770, or misconstrued as such by the state court.[1]

The respondent acknowledges that the habeas petition was timely filed in this court, that it is the first federal habeas petition pertaining to these convictions, and that it does not contain any unexhausted claims. (Doc. No. 11 at 2, 4.)

---

[1] The state court order gives a description of the petitioner's second post-conviction petition, noting that in it the petitioner stated he had filed a "previous petition for post-conviction relief, but [received] no response," and that he "left the inquiry about counsel for any prior post-conviction proceeding or 'appeal from adverse ruling in a Post-Conviction proceeding' blank." (Doc. No. 14 at 8–9.) These responses would correspond with the petitioner's intent to refile the post-conviction petition ruled premature in case number 2014-B-1187, his drug conviction, rather than to file a second petition in case number 2012-B-1770, where he had been appointed post-conviction counsel and had an evidentiary hearing before the trial court denied relief and the TCCA affirmed.

**II.     Statement of Facts**

The following summary of the facts is taken from the TCCA's opinion affirming the petitioner's conviction on retrial of the drug charges, *State v. Johnson*, No. M2015-01160-CCA-R3-CD, 2016 WL 3435589 (Tenn. Crim. App. June 15, 2016), *app. denied* (Tenn. Oct. 19, 2016).

> This case arises from an undercover drug purchase in the Edgehill neighborhood of Nashville, Tennessee, on March 27, 2012. A Davidson County grand jury indicted the Defendant for sale of less than .5 grams of cocaine in a drug-free school zone and delivery of less than .5 grams of cocaine in a drug-free school zone. The following evidence was presented at the Defendant's trial: Detective Michael Donaldson, a Metropolitan Nashville police officer, testified that he worked in an "undercover capacity" buying and selling drugs on the streets. On March 27, 2012, Detective Donaldson was assigned to the Crime Suppression Unit and was buying drugs from street level drug sellers. He received a list of citizen complaints about where drugs were being sold on the street. Detective Donaldson went to one area of complaint, at the corner of Wedgewood Avenue and Waverly Avenue in the Edgehill neighborhood. Detective Donaldson parked his vehicle at the intersection and began walking around the area. He saw a woman and two men standing by a tree, and as the woman walked away from the men, Detective Donaldson asked her if she knew where he could buy drugs. The woman turned around and pointed to the two men, and Detective Donaldson approached them, one of whom he identified as the Defendant. Detective Donaldson asked the Defendant in "street lingo" if he could buy $30 worth of crack cocaine from him. The Defendant replied that he did not have "any, he was waiting to get his and that [Detective Donaldson] would have to come back."
>
> Detective Donaldson walked away from the Defendant and then advised his partner that he needed to wait for the Defendant to get the drugs. Detective Donaldson subsequently went back over to the Defendant and asked if the Defendant had gotten the drugs yet, to which he replied that he had not. The Defendant told Detective Donaldson that he would "get it from another place." The Defendant walked across Wedgewood Avenue and directed Detective Donaldson to follow him. Once across the street, the Defendant knocked on the door of a house, and someone opened the door. The Defendant spoke to that person and then walked back over to Detective Donaldson and said that he could not get any drugs from the person inside the house but that the Defendant knew another place to try. The Defendant and Detective Donaldson got into Detective Donaldson's undercover vehicle, driven by Detective Donaldson's partner, and drove to a nearby Shell gas station, located at the intersection of Lafayette Street and Lewis Street. Detective Donaldson testified that the gas station was close to Johnson Elementary School.
>
> Once at the Shell station, Detective Donaldson gave the Defendant previously photocopied "buy money," and the Defendant exited the vehicle to get the drugs.

The Defendant walked across Lewis Street and into a housing division; Detective Donaldson indicated the Defendant's route on a map displayed for the jury. He recalled that it was 9:15 or 9:30 p.m. Detective Donaldson clarified that the Defendant exited the vehicle with the buy money and disappeared from view, and neither Detective Donaldson nor his partner followed the Defendant. Approximately five minutes later, the Defendant returned to the vehicle and appeared nervous because uniformed police officers were on foot patrol close by. Detective Donaldson stated that the uniformed officers had no knowledge of the undercover operation. The Defendant got into the vehicle and said, "Let's go." Detective Donaldson asked for the drugs or his money back. The Defendant insisted that they drive away. As Detective Donaldson drove the vehicle away from the gas station, the Defendant showed him a large bag. The bag was "a much larger bag than you would get for $30 worth of cocaine" and Detective Donaldson asked if "all of it" was for him. The Defendant said, "no, the rest of it is mine." The Defendant untied the bag and "broke off a piece [of crack cocaine] the size of a pencil eraser and handed [Detective Donaldson] that piece...." Detective Donaldson stated that the Defendant gave the drugs to him "approximately a block" from the Shell gas station at Worth Street. Detective Donaldson then secured the sold crack cocaine, completing the transaction, and gave the "takedown signal" to nearby police officers. Detective Donaldson continued to engage the Defendant in conversation hoping to distract him.

Uniformed officers responded to the takedown signal, and the Defendant started to eat the remaining drugs in the bag. Detective Donaldson wrestled with the Defendant in an attempt to stop him from eating all the remaining drugs but was unable to stop the Defendant from swallowing them. However, Detective Donaldson still had the piece of crack cocaine he had purchased from the Defendant. Officer Bill Loucks then attempted to remove the Defendant from the vehicle, and the Defendant punched and kicked him to avoid being handcuffed. "After considerable wrestling and fighting," the Defendant was detained, at which point Detective Donaldson exited his vehicle and conducted a field test on the drugs purchased from the Defendant. The drugs tested positive for cocaine base and were placed in an evidence bag. Detective Donaldson identified in court the drugs in the evidence bag.

Detective Donaldson again identified on a map where the Shell gas station was located. He stated that the Police Department had done "numerous" undercover drug purchases at "this location" and had determined that it was located in a "drug free school zone." Detective Donaldson recalled that the Defendant, when he returned to the vehicle with drugs, did not have the buy money on his person, as determined by a search of his person after he was detained. The buy money was not recovered.

On cross-examination, Detective Donaldson clarified that the complaint about drug activity did not identify the Defendant but simply an address at an intersection. He agreed that he was not investigating the Defendant in particular. Detective

Donaldson stated that he stayed in the vehicle at the Shell station, instead of following the Defendant into the housing division, and he did not see the Defendant acquire the drugs.

Detective Brittany Shoesmith testified that she worked for the Metropolitan Nashville Police Department and was partnered with Detective Donaldson on March 27, 2012, working in an undercover capacity. Detective Shoesmith drove the undercover vehicle with Detective Donaldson as a passenger to the Edgehill neighborhood. She recalled that Detective Donaldson got out of the vehicle and came back a short while later to report that he had met an individual to buy drugs from but that the individual needed to get more drugs from his supplier. After several attempts to find drugs, the Defendant and Detective Donaldson both got into the vehicle and the three of them drove to the Shell gas station on Lafayette Street where the Defendant said he would meet with his supplier and get more drugs. At the gas station, the Defendant exited the vehicle and was gone for no more than ten minutes. When he returned, he got back into the vehicle and told Detective Shoesmith to drive away. Detective Shoesmith began driving the vehicle on Lafayette Street towards downtown. The Defendant pulled out a plastic bag containing what Detective Shoesmith described as crack cocaine. The Defendant "broke off a piece and gave it to Detective Donaldson." The "takedown word" was then given and Detective Shoesmith stopped the vehicle on Lafayette Street and the Defendant was taken into custody.[2]

On cross-examination, Detective Shoesmith clarified that she stopped the vehicle after Detective Donaldson had received the drugs from the Defendant. She agreed that she swore out arrest warrants in this case. She could not recall the address written on the warrants or exactly where the vehicle stopped. Detective Shoesmith agreed that if the warrants listed 1035 1st Avenue North, that was an accurate address for where she stopped the vehicle.

Detective Bill Loucks testified that he was working on the narcotics unit on March 27, 2012, and that he provided "cover" for the undercover officers and monitored their interactions. Once the takedown signal was given, Detective Loucks stopped the vehicle driven by Detective Shoesmith and took the seller, the Defendant, into custody. He was not involved in the drug transaction until the takedown signal was given.

Special Agent Denotria Patterson testified that she worked for the Tennessee Bureau of Investigation ("TBI") as a forensic scientist. Agent Patterson was admitted as an expert in the field of forensic chemistry. Agent Patterson tested the

---

[2] Before the petitioner could be secured, he ingested the remainder of the drugs and the plastic bag, leading to his conviction in case number 2012-B-1770 for tampering with evidence. *State v. Johnson*, No. M2014-00766-CCA-R3-CD, 2015 WL 894675, at *2 (Tenn. Crim. App. Mar. 2, 2015).

6

drugs that the Defendant sold to Detective Donaldson in the TBI laboratory. She stated that the drugs tested positive for cocaine base and weighed .20 grams. She testified that cocaine was a Schedule II substance.

David Kline testified that he worked at the Metropolitan Nashville Planning Department. Mr. Kline identified on a map the intersection of Lafayette Street and Lewis Street, where the Shell gas station was located; the map was admitted into evidence. He also identified the property lines for Napier School and a 1,000 foot "buffer" zone around the school. He testified that the Shell gas station at the intersection of Lafayette Street and Lewis Street was within the 1,000 foot buffer zone surrounding Napier School.

On cross-examination, Mr. Kline stated that 1st Avenue North was also called Hermitage Avenue. He indicated where the street was on the map but could not identify the specific location of 1035 1st Avenue North.

Based upon this evidence the jury convicted the Defendant of sale of less than .5 grams of cocaine within a drug-free school zone. The jury foreperson stated that the jury had not deliberated as to the delivery of less than .5 grams of cocaine within a drug-free school zone charge; the charge was dismissed.

*State v. Johnson*, 2016 WL 3435589, at *1–3.

## III. Issues Presented for Review

The petition in this case (Doc. No. 1), as amended (Doc. No. 12), presents the following three grounds for relief from the judgment of conviction in case number 2014-B-1187,[3] for selling cocaine in a drug-free school zone:

(1)   Trial counsel was constitutionally ineffective for failing to file a motion to dismiss the indictment, which (a) was defective under *Blockburger v. United States*, 284 U.S. 299 (1932), because it charged the petitioner with a single offense that violated two state statutes which have different elements and/or prescribe different punishments, and (b) failed to give adequate notice of the charges against the petitioner under *Hamling v. United States*, 418 U.S. 87 (1974);

---

[3]   The petitioner has clarified that "the conviction for tampering with evidence . . . is not being challenge[d] in the Federal Habeas Corpus [case]." (Doc. No. 12 at 3.)

(2) Trial counsel was ineffective for failing to ensure that the petitioner understood Tenn. Code Ann. § 39-17-432 (which enhanced his sentence based on proximity of the drug sale to a school), and for failing to object to that statute being introduced to the jury, including by improper jury instruction; and

(3) Trial counsel was ineffective for failing to challenge the use in case number 2014-B-1187 of the evidence (cocaine) which had earlier been introduced as evidence in case number 2012-B-1770.

## IV. Legal Standard

The petition is governed by the Antiterrorism and Effective Death Penalty Act (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214. "AEDPA requires heightened respect for state court factual and legal determinations." *Lundgren v. Mitchell*, 440 F. 3d 754, 762 (6th Cir. 2006). Under its "highly deferential standard . . . state-court decisions [must] be given the benefit of the doubt." *Bell v. Cone*, 543 U.S. 447, 455 (2005); *see also Hardy v. Cross*, 565 U.S. 65, 66 (2011); *Felkner v. Jackson*, 562 U.S. 594, 597 (2011). The AEDPA standard is difficult to meet "because it was meant to be." *Harrington v. Richter*, 562 U.S. 86, 102 (2011); *see, e.g.*, *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011). The statute enforces the principle that "habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." *Harrington*, 563 U.S. at 102–03.

AEDPA also imposes a total exhaustion requirement, contained in 28 U.S.C. § 2254(b) and (c), which directs that "[a]n application for a writ of habeas corpus . . . shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State" or such remedies are no longer available. *Rhines v. Weber*, 544 U.S. 269, 274 (2005). With certain limited exceptions, to properly exhaust a claim under AEDPA, the petitioner must have raised the

same claim on the same grounds before the state courts. *Pinholster*, 563 U.S. at 182; *Kelly v. Lazaroff*, 846 F.3d 819, 828 (6th Cir. 2017) (quoting *Wagner v. Smith*, 581 F.3d 410, 417 (6th Cir. 2009)) (petitioner must present the "same claim under the same theory" to the state court). "Because the exhaustion doctrine is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts . . . state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999); *see also Lyons v. Stovall*, 188 F.3d 327, 331 (6th Cir. 1999). In Tennessee courts, a petitioner has exhausted all available state remedies when the TCCA has denied a claim of error. *Adams v. Holland*, 330 F.3d 398, 401 (6th Cir. 2003) (citing Tenn. Sup. Ct. R. 39).

"[A] habeas petitioner who has failed to meet the State's procedural requirements for presenting his federal claims has deprived the state courts of an opportunity to address those claims in the first instance." *Coleman v. Thompson*, 501 U.S. 722, 732 (1991). If the claims can no longer be considered by the state court because they are procedurally barred under state law, they are considered defaulted for purposes of federal review. A petitioner must "demonstrate cause for his state-court default of *any* federal claim, and prejudice therefrom, before the federal habeas court will consider the merits of that claim." *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000).

**V.     Analysis**

The respondent argues that the petitioner has exhausted his state court remedies only by procedural default, as he failed to file a second post-conviction petition after his direct appeal concluded. The petitioner has rebutted that argument with proof that he filed a second post-conviction petition on June 7, 2017, which was either misidentified or misconstrued as a second

9

petition in the case which had already been determined at the post-conviction trial and appellate levels. The record before the court (which does not include the second post-conviction petition) does not definitively establish that this second filing was an attempt to properly exhaust the petitioner's state post-conviction remedies related to case number 2014-B-1187, but the court finds it reasonable to conclude that it was.

With the case in this procedural posture, the court will examine the merits of the petition before it. If the claims of the habeas petition lack merit, the court can adjudicate them on that basis regardless of whether they were procedurally defaulted. *See* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."). "The U.S. Supreme Court has held that federal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits." *Hudson v. Jones*, 351 F.3d 212, 215–16 (6th Cir. 2003) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997)).

As further explained below, the court finds no merit in the petitioner's claims that his trial counsel was ineffective.

### 1. Ineffective Assistance—Failure to Challenge the Indictment

The petitioner claims that his trial counsel was ineffective in failing to challenge the indictment in case number 2014-B-1187, his drug conviction. Citing *Blockburger v. United States*, 284 U.S. 299 (1932), and *Hamling v. United States*, 418 U.S. 87 (1974), the petitioner claims that the indictment was defective because it charged him with violating two state statutes, Tenn. Code Ann. §§ 39-17-417 and 39-17-432, which have different elements and/or prescribe different punishments, and because it failed to give adequate notice of the charges against him. (Doc. No. 1 at 5; Doc. No. 12 at 2.)

10

The U.S. Supreme Court's decision in *Strickland v. Washington*, 466 U.S. 668 (1984), established a two-part test to evaluate whether counsel has been constitutionally ineffective. A petitioner must prove (1) that counsel's performance fell below an objective standard of reasonableness and (2) that, but for counsel's deficient representation, "the result of the proceeding would have been different." *Strickland*, 466 U.S. at 688–89, 694. The *Strickland* standard sets a high bar that is not easily surmounted by habeas petitioners. *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010). "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Knowles v. Mirzayance*, 556 U.S. 111, 124 (2009) (quoting *Strickland*, 466 U.S. at 690). Ultimately, "[t]he determinative issue is not whether petitioner's counsel was ineffective but whether he was so thoroughly ineffective that defeat was 'snatched from the jaws of victory.'" *West v. Seabold*, 73 F.3d 81, 84 (6th Cir. 1996) (quoting *U.S. v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992)).

Here, the petitioner cannot establish his trial counsel's deficiency in failing to challenge the indictment or prejudice resulting therefrom, because he has not identified any grounds for finding the indictment defective. The language of an indictment must give adequate notice of the charges against the criminal defendant. *Hamling*, 418 U.S. at 117. However, "[i]t is generally sufficient that an indictment set forth the offense in the words of the statute itself," as long as those words unambiguously "set forth all the elements necessary to constitute the offence intended to be punished." *Id.* (quoting *United States v. Carll*, 105 U.S. 611, 612 (1882)). The indictment in the petitioner's case charged that,

> [o]n the 27th day of March, 2012, in Davidson County, Tennessee and before the finding of this indictment, [he] knowingly did sell less than .5 gram of a substance cocaine, a Schedule II controlled substance on the grounds or facilities of any school or within one thousand (1,000) feet of the real property that comprises a public or private elementary school, middle school, or secondary school, in

11

> violation of Tennessee Code Annotated § 39-17-417, and against the peace and dignity of the State of Tennessee.

(Doc. No. 10-12 at 4.) This language tracks the language of § 39-17-417(a)(3) and (c)(2)(A), which makes it a crime to "sell a controlled substance . . . including cocaine . . . in an amount of less than point five (0.5) grams," and of § 39-17-432(b)(1), which enhances the penalty for any such sale "that occurs on the grounds or facilities of any school or within one thousand feet (1,000#) of the real property that comprises a public or private elementary school, middle school, secondary school" or other drug-free zones. The court finds that the petitioner's indictment provided adequate notice of his charges under *Hamling*. *See also State v. Braxton*, No. M2010-01998-CCA-R3-CD, 2011 WL 5573357, at *4 (Tenn. Crim. App. Nov. 15, 2011), *perm. app. denied* (Tenn. Apr. 12, 2012), a case involving an indictment nearly identical to the one at issue here, where the court found that the criminal defendant "was given clear notice that he was charged with committing drug offenses within a school zone," and that "[t]he failure to reference [§] 39-17-432 does not render the indictment invalid[.]"

The failure of the indictment to reference § 39-17-432 also does not invalidate it under the U.S. Supreme Court's decision in *Blockburger*. That case enforced the principle that if the law prohibits two individual acts, "then each act is punishable separately" and separate indictments lie; but, if the law prohibits "the course of action which [the individual acts] constitute . . . there can be but one penalty" imposed. *Blockburger*, 284 U.S. at 301. Despite the petitioner's claim that his indictment charged "two different punishment[s]" and that the statutes have different elements (Doc. No. 1 at 5), Tennessee courts have held that

> [t]he drug-free zone violation is not a separate offense and is not an essential element of the 39–17–417 offense; rather, the violation allows for increased punishment for a defendant's conviction pursuant to 39–17–417. [*State v.*] *Garcia*, 2010 WL 5343286, at *18 [(Tenn. Crim. App. Dec. 22, 2010)]. Indeed, "both the caption of the Act and the policy statement set forth in the subsection (a) of the Act

reflect the purpose of the legislature, not to create a new offense, but rather to create drug-free school zones by enhancing penalties for violations of Tenn. Code Ann. § 39–17–417 occurring inside the zones." *State v. Smith,* 48 S.W.3d 159, 168 (Tenn. Crim. App. 2000).

*State v. Tate*, No. E2014-01191-CCA-R3-CD, 2015 WL 2400718, at *6 (Tenn. Crim. App. May 20, 2015).

Selling drugs in a drug-free school zone is thus a single offense under Tennessee law, and *Blockburger* does not require separate indictments in such cases. Even if this court were to determine that the state courts interpreted and applied these state statutes improperly, the writ of habeas corpus may not issue where the underlying claim is based on such issues of state law. *King v. Raney*, No. 3:03-0572, 2007 WL 2471678, at *8 (M.D. Tenn. Aug. 27, 2007); *see also Washington v. State of Tenn.*, No. 3:17-cv-00263, 2017 WL 6554890, at *16 (M.D. Tenn. Dec. 22, 2017) ("An indictment which fairly but imperfectly informs the accused of the offense for which he is to be tried does not give rise to a constitutional issue cognizable in habeas proceedings.") (quoting *Mira v. Marshall*, 806 F.2d 636, 639 (6th Cir. 1986)).

Accordingly, the petitioner's trial counsel was not ineffective in failing to seek dismissal of the indictment on these grounds.

### 2. Ineffective Assistance—Failure to Ensure Petitioner Understood Sentence Enhancement or to Object to Mention of Enhancement Before Jury

The petitioner claims in his original petition that his trial counsel was ineffective in failing to ensure that he understood the application of § 39-17-432 to his case. (Doc. No. 1 at 6.) His amended petition does not include this claim, but focuses on the allegedly improper mention of the statutory enhancement before the jury. (Doc. No. 12 at 2–3.)

Even if, in the course of mounting two defenses to this drug charge, the petitioner was not made to understand the consequences of the drug transaction occurring within a drug-free school

13

zone, the statute itself "provides ample notice to would-be offenders of their potential criminal liabilities." *Osborne v. Brandon*, No. 3:05-0500, 2005 WL 3263360, at *6 (M.D. Tenn. Dec. 1, 2005). In any event, the petitioner does not allege grounds for believing that the outcome of the trial would have been different had he fully understood the sentence enhancement he faced. *Strickland*, 466 U.S. at 694. He does not allege that he rejected a plea offer based on this misunderstanding, *see Sawaf v. U.S.*, 570 F. App'x 544, 547 (6th Cir. 2014), or that he would have testified in his own defense[4] or made any other significant decision differently had he fully understood the application of § 39-17-432. The petitioner thus fails to claim any prejudice resulting from counsel's failure to ensure that he understood the statute.

In his original and amended petitions, the petitioner claims that trial counsel was ineffective in failing to object to the language of § 39-17-432 being introduced before the jury, asserting that the jury was "contaminated by the use of T.C.A. § 39-17-432 in violation of the 6th and 14th Amendment to the United States Constitution." (Doc. No. 12 at 2–3.) Alternatively, he claims that counsel was ineffective in failing to question the jurors regarding whether they could fairly determine his innocence or guilt in light of that statute's application. (*Id.*)

"The Sixth and Fourteenth Amendments guarantee a criminal defendant's right to a fair and impartial jury." *Hanna v. Ishee*, 694 F.3d 596, 616 (6th Cir. 2012) (citing *Morgan v. Illinois*, 504 U.S. 719, 729 (1992)). However, the petitioner cannot demonstrate that the jury's impartiality was threatened by the references to the statutory enhancement at issue here. Indeed, the location of the drug offense within a drug-free school zone was charged in the indictment (Doc. No. 10-12 at 4), and was therefore necessarily presented in the jury charge (*id.* at 16–17), the verdict form

---

[4] The record reveals the state's pretrial notice to the petitioner that it would seek to enhance his sentence and impeach him, if he did choose to testify, with his numerous prior criminal convictions. (Doc. No. 10-12 at 7–9.)

(*id.* at 50–51), and otherwise before the jury. *Cf. State v. Fields*, 40 S.W.3d 435, 439–40 (Tenn. 2001) (finding enhancement not properly applied at sentencing where indictment did not contain reference to drug sale occurring in drug-free school zone). While the petitioner is correct that the enhancement only applies if there is a conviction for the sale of drugs, there is no support for his inference that the sale must be determined without mention of the enhancement. Because the jury instruction correctly followed the language of the indictment, the petitioner "cannot prove that his counsel was deficient for failing to ask for a different one, or that he was prejudiced." *Davidson v. Lindamood*, No. 1:14-cv-00161, 2018 WL 2192110, at *2 (M.D. Tenn. May 14, 2018) (overruling petitioner's objection to jury instruction that only required finding that drug sale occurred within 1,000 feet of daycare facility, without specific mens rea) (citing *Strickland*, 466 U.S. at 694). No right to habeas relief can be claimed from counsel's failure to object to the presentation of this enhancement factor to the jury.

Finally, the petitioner's claim that counsel was ineffective in failing to question the jurors (presumably in voir dire) about their ability to fairly decide the case in view of the enhancement falls short of the standard for claiming entitlement to habeas relief. It is only when "counsel perform[ed] so deficiently during the jury selection process . . . as to deny [the petitioner] his Sixth Amendment right to an impartial jury" that habeas relief may be warranted on the basis of ineffective assistance of counsel during voir dire. *Hanna*, 694 F.3d at 616 (citing *Holder v. Palmer*, 588 F.3d 328, 338 (6th Cir. 2009)). "An attorney's actions during voir dire are considered to be matters of trial strategy. . . . A strategic decision cannot be the basis for a claim of ineffective assistance unless counsel's decision is shown to be so ill-chosen that it permeates the entire trial with obvious unfairness." *Holder*, 588 F.3d at 338 (quoting *Hughes v. U.S.*, 258 F.3d 453, 457 (6th Cir. 2001)). Although the transcript of the selection of the petitioner's jury does not appear

15

to be included in the record of proceedings produced by the respondent, the petitioner's allegation concerning counsel's questioning of the jury does not come close to meeting this standard. Even if he had sufficiently alleged counsel's deficient performance, he has not alleged grounds for finding that any or all of his jurors were therefore prejudiced against him. *Hanna*, 694 F.3d at 617 (finding no prejudice resulting from ineffective voir dire because "Petitioner cannot show . . . that the juror harbored any actual bias"). No habeas relief is warranted on this claim.

### 3. Ineffective Assistance—Failure to Challenge Use of Evidence in Successive Trials

Lastly, the petitioner claims that his trial counsel was ineffective for failing to challenge the use in case number 2014-B-1187 of the physical evidence (cocaine) that had earlier been introduced as proof of tampering in case number 2012-B-1770 (Doc. No. 1 at 8), which subjected him to "multiple punishment for the same offense." (Doc. No. 12 at 3.)[5] However, the two offenses were plainly separate, and the petitioner fails to identify the source of any federal right to exclude from use in a subsequent prosecution evidence earlier used to prove an unrelated offense. No habeas relief is warranted on this claim.

## VI. Conclusion

In light of the foregoing, the court finds that the instant petition for writ of habeas corpus (Doc. No. 1), as amended (Doc. No. 12), lacks merit. The court will therefore **DENY** the petition.

---

[5] The petitioner also argues within this third claim that "Trial counsel was ineffective for failing to challenge the indictment in case no. 2014-B-1187 because either count one or two." (Doc. No. 12 at 3–4.) He claims that he was prejudiced by being forced to defend both charges of sale (count 1) and delivery (count 2) of drugs in a drug-free school zone, when the state waited until after trial to dismiss the delivery charge. (*Id.* at 4.) However, it is clear under state law that both sale and delivery were properly charged in separate, alternative counts of the indictment, *State v. Isabell*, No. M2002-00584-CCA-R3-CD, 2003 WL 21486982, at *3 (Tenn. Crim. App. June 27, 2003), and that the jury was properly instructed that the petitioner could not be convicted of both. (Doc. No. 10-14 at 66–67.) There is no merit to the claim that counsel was ineffective in failing to challenge the indictment on these grounds.

16

An appropriate order will enter.

ENTER this 19th day of September 2018.

Aleta A. Trauger
United States District Judge